SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
YASIN M. ALMADANI
California Bar No. 242798
Assistant United States Attorney
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6968
    Facsimile: (213) 894-7177
    E-mail: Yasin.Mohammad@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                 v.<br><br>$47,379.00 IN U.S. CURRENCY,<br><br>            Defendant. | Case No. CV 17-03815<br><br>**VERIFIED COMPLAINT FOR FORFEITURE**<br><br>18 U.S.C. §§ 981(a)(1)(A) and (C), and 21 U.S.C. § 881(a)(6)<br><br>[DEA] |

       Plaintiff United States of America brings this claim against the defendant $47,379.00 in U.S. Currency, and alleges as follows:

### I.   JURISDICTION AND VENUE

       1.   The government brings this <u>in</u> <u>rem</u> forfeiture action under 18 U.S.C. §§ 981(a)(1)(A) and (C), and 21 U.S.C § 881(a)(6).

       2.   This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(b).

## II. PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America (the "government").

5. The defendant is $47,379.00 in U.S. Currency (the "defendant currency") seized during the execution of a Federal search and seizure warrant at the Fu Yi Store (the "Fu Yi Store"), located at 127 South Garfield Avenue, Suite A, Monterey Park, California, and operated by Xiubin Yu ("X.Yu").

6. The defendant currency was seized on or about November 29, 2016, by law enforcement officers and is currently in the custody of the United States Marshals Service in this District, where it shall remain subject to the jurisdiction of this Court during the pendency of this action.

7. The interests of X.Yu, Zhan Lin ("Z.Lin"), Meilin Yu ("M.Yu"), Honghai Lin ("H.Lin") and Ting Lin ("T.Lin") may be adversely affected by these proceedings.

## III. EVIDENCE SUPPORTING FORFEITURE

### A. BACKGROUND CONCERNING "HAWALA" MONEY LAUNDERING TRANSACTIONS

8. The "hawala" system, also known by other names such as "flying money," is an informal monetary remittance system often used to transfer money within the United States and from one country to another. While the hawala system can be used for legitimate purposes at times, the system is also exploited by persons seeking, among other things, to conceal the location, source, ownership and/or control of the proceeds of narcotics trafficking and other unlawful activities. Because hawala transactions are unregulated and not

2

subject to the scrutiny of law enforcement or financial institutions, significant monetary transfers can occur without detection.

9. Typically, a hawala transaction begins when an individual (the sender) wishes to transfer a certain amount of money to an associate (the recipient) either domestically or overseas. The sender contacts a local "hawaladar" (i.e., an agent, broker or courier in a hawala system) who typically charges a percentage based fee to complete the cash transaction. The sender's hawaladar then contacts a hawaladar in the recipient's area who provides the recipient with the designated amount of cash. Once the cash has been transferred to the recipient, a separate transaction can occur between the hawaladars in both the originating and receiving locations. The debt can be reconciled through a number of different means, including the exchange of cash or merchandise, the illicit transfer of cash through couriers, and the laundering of money through legitimate businesses associated with the hawala system.

**B.   EVIDENCE OF MONEY LAUNDERING OF PRESUMED DRUG TRAFFICKING PROCEEDS AND UNLICENSED MONEY TRANSMISSION**

10. As described below, X.Yu, Z.Lin, T.Lin and H.Lin (collectively, the "hawaladars") have conspired to launder money in and around New York City, New York, Los Angeles, California, and elsewhere. Below are summaries of several money laundering transactions in the form of interstate money transmissions conducted by and through the hawaladars, showing, among other things, that the hawaladars are involved in laundering bulk cash represented to be the proceeds of and used in drug trafficking.

11. Upon information and belief, at no time between September 8, 2015, and November 16, 2016, was X.Yu or the Fu Yi Store licensed to transmit money.

3

### i. September 2015 Money Transmission

12. According to records of the California Secretary of State, X.Yu is the Chief Executive Officer, Secretary and Chief Financial Officer of a "wholesale and retail trading company" located in Monterey Park, California, known as the Fu Yi Store.

13. On or about September 8, 2015, during an undercover operation by the Drug Enforcement Administration ("DEA"), X.Yu told a DEA Operative ("DO") that she (X.Yu) could transfer cash from New York to Los Angeles for a three and a half percent commission of the total amount transferred.[1]  X.Yu explained that the cash is handed off to an associate in New York and can be released in Los Angeles within approximately two days.  X.Yu also stated that she transmits money from the United States to China.

14. During the September 8, 2015, meeting, knowing that DO wanted to transfer illegal drug proceeds, X.Yu provided DO with a New York City telephone number with instructions on how to set up a money drop with one of X.Yu's associates in New York.  X.Yu also provided her own Los Angeles telephone number.

15. The next day, on September 9, 2015, a DEA Special Agent acting in an undercover capacity (UC-1), called the New York City number and spoke with an individual later identified as Z.Lin.  Per X.Yu's instruction, UC-1 stated that she was calling on behalf of "Mr. Wong" for "Little Brother."  During the recorded conversation, UC-1 and Z.Lin agreed to meet at 6:30 p.m. that day at the intersection of Chatham Square and East Broadway in Manhattan, New York.

---

[1] At no time during the undercover operations between September 2015 and November 2016 did X.Yu know that she was dealing with a DEA operative.

16. Shortly after 7:00 p.m. that day, UC-1 telephonically contacted Z.Lin and advised that s/he had arrived and was waiting at the agreed upon location. Z.Lin returned UC-1's phone call, and UC-1 observed an Asian male on a cell phone looking toward UC-1's vehicle. Minutes later, Z.Lin entered the front passenger seat of UC-1's vehicle. UC-1 told Z.Lin that "Mr. Wong" had asked UC-1 to drop off "eight," meaning $80,000 in United States currency, and UC-1 pointed to a white plastic bag containing a cardboard box that contained $80,000.[2] UC-1 stated that Z.Lin should call "Big Sister" and tell her that Z.Lin was in receipt of the currency. Z.Lin asked detailed questions about "Big Sister," such as a description of the sound of her voice. To answer these questions, UC-1 had Z.Lin speak to DO over the phone about "Big Sister." Shortly thereafter Z.Lin took the bag containing $80,000 from UC-1.

17. The next day, on September 10, 2015, DO met with X.Yu at the Fu Yi Store where X.Yu gave DO $77,600, which was the $80,000 collected by Z.Lin less a three percent commission.[3]

### ii. October 2015 Money Transmission

18. Between October 1, 2015, and October 7, 2015, X.Yu and Z.Ling engaged in a bulk currency transfer similar to the September 2015 money transmission. Z.Lin received $120,000 from UC-1 in New York and, in turn, X.Yu gave $116,400 to DO in Los Angeles at the Fu Yi Store, accounting for a three percent commission.

---

[2] All currency referenced herein is United States currency.
[3] Such commissions customarily vary between two and four percent.

5

### iii. October 2015 Conversation

19. Later that month, on October 22, 2015, DO met with X.Yu and H.Lin at the Fu Yi Store and talked about X.Yu's money laundering activities with another marijuana dealer whose marijuana operation had been seized. X.Yu also mentioned that her associates in Canada were interested in the marijuana business. X.Yu further discussed her ability to transfer money between China and the United States for a five percent commission.

### iv. November 2015 Money Transmission

20. On November 11, 2015, X.Yu provided DO with another New York City telephone number to coordinate another money transmission between New York and Los Angeles.

21. On November 12, 2015, X.Yu and H.Lin engaged in a bulk currency transfer similar to the previous money transmissions. H.Lin received $100,000 from UC-1 in New York and, in turn, X.Yu gave $98,000 to DO in Los Angeles at the Fu Yi Store, accounting for a two percent commission. During the money transfer X.Yu discussed her desire to start a marijuana business with DO. X.Yu also mentioned that a large marijuana seizure in New York was adversely affecting her business. X.Yu's daughter, T.Lin was present at the Fu Yi Store and witnessed both the money transfer and the conversation concerning the marijuana business.

### v. December 2015 Money Transmission

22. On December 28, 2015, DO called X.Yu to set up another money transmission between New York and Los Angeles.

23. Between December 29, 2015, and December 30, 2015, X.Yu and Z.Lin engaged in a bulk currency transfer similar to the previous money transmissions. Z.Lin received $190,000 from UC-1 in New York

and, in turn, X.Yu gave $186,200 to DO in Los Angeles at the Fu Yi Store, accounting for a two percent commission.  At the money transfer, X.Yu again expressed interest in starting a marijuana business with DO.  H.Lin was present.

### *vi.   January 2016 Bulk Cash Seizure*

24.   On January 5, 2016, law enforcement officers stopped Z.Lin at Newark Liberty International Airport in Newark, New Jersey while he was on his way to board a flight to Burbank, California via Denver, Colorado.  During the passenger screening process, officers of the Transportation Security Administration x-rayed and physically inspected Z.Lin's carry-on luggage and found $45,000 in a McDonald's restaurant bag secured among articles of clothing.  Z.Lin was asked in the Mandarin language about how much money he had, and he responded $45,000.  Z.Lin also stated that the money was wired to him by his cousin in China in November 2015 because his cousin planned to travel to California and needed the money to spend and gamble while in California.  Z.Lin later stated that the money was given to him in New York, in person, by an individual who Z.Lin stated was his cousin's wife who lives in California.  Z.Lin also said that he did not know why he previously said that the money had been wired to him.  Z.Lin further stated that he works at his mother's store and provided the name and street address of the Fu Yi Store.

25.   Law enforcement officers seized the $45,000 and a certified narcotics detection canine alerted to the odor of illegal drugs on the currency.

*vii.  November 2016 Money Transmission*

26. On November 15, 2016, X.Yu provided DO a New York City telephone number to coordinate another money transmission between New York and Los Angeles.

27. Between November 15, 2016, and November 16, 2016, X.Yu and T.Lin engaged in a bulk currency transfer similar to the previous money transmissions. T.Lin received $125,000 from an undercover agent ("UC-2") posing as DO's associate and, in turn, X.Yu gave $121,875 to DO in Los Angeles at the Fu Yi Store, accounting for a two-and-a-half percent commission.

**C.   ARREST AND SEARCH ON NOVEMBER 29, 2016**

28. While conducting surveillance on November 29, 2016, officers observed X.Yu arrive in a red Honda Odyssey ("Honda") and park in the rear parking lot of the Fu Yi Store.

29. Officers contacted X.Yu and placed her under arrest pursuant to an Eastern District of New York arrest warrant issued on November 29, 2016, for violations of 18 U.S.C. § 1956(h) (Money Laundering Conspiracy).

30. After arresting X.Yu, officers conducted a search of the Fu Yi Store. The store appeared to be selling dry or preserved goods, but was poorly lit and unkempt. The floors were dusty, the window blinds were bent, and the shelves appeared to be randomly stocked.

31. Officers seized $47,379.00 in U.S. currency (the defendant currency) from the Fu Yi Store.

32. Later that day, Z.Lin arrived at the Fu Yi Store and was also arrested pursuant to an Eastern District of New York arrest warrant issued on November 29, 2016, for violations of 18 U.S.C. § 1956(h) (Money Laundering Conspiracy).

33. On March 3, 2017, a federal grand jury in the Eastern District of New York (Brooklyn) indicted X.Yu, on charges of money laundering conspiracy in violation of 18 U.S.C. § 1956(h). <u>United States v. Yu,</u> Case No. CR 17-118-RRM.

### IV. CLAIMS FOR RELIEF

34. Based on the foregoing, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal drug trafficking and/or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq. The defendant currency is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

35. Based on the forgoing, plaintiff also alleges that the defendant currency was involved in or traceable to money laundering, in violation of 18 U.S.C. §§ 1956 and 1957, with the specified unlawful activity being drug trafficking as enumerated in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1). The defendant currency is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

36. Based on the foregoing, plaintiff also alleges that the defendant currency was involved in or traceable to unlicensed money transmission, in violation of 18 U.S.C. § 1960. The defendant currency is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

37. WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

    (d)  for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: May 22, 2017              SANDRA R. BROWN
                                 Acting United States Attorney
                                 LAWRENCE S. MIDDLETON
                                 Assistant United States Attorney
                                 Chief, Criminal Division
                                 STEVEN R. WELK
                                 Assistant United States Attorney
                                 Chief, Asset Forfeiture Section

                                   /s/Yasin M. Almadani
                                 YASIN M. ALMADANI
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**VERIFICATION**

I, James Young, declare and say that:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read the attached Verified Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 22 day of May 2017 at Los Angeles, California.

JAMES YOUNG
Special Agent - DEA